# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

In re:                                                          Chapter 11

SHELBRAN INVESTMENTS, L.P.,                    Case No. 3:10-BK-10937 (JAF)

    Debtor
_____/

## DISCLOSURE STATEMENT WITH RESPECT TO
## PLAN OF REORGANIZATION OF SHELBRAN INVESTMENTS, L.P.

Robert D. Wilcox
Florida Bar No.: 755168
Emily M. Friend
Florida Bar No.: 0073042
BRENNAN, MANNA, & DIAMOND
800 West Monroe Street
Jacksonville, FL  32202
Telephone: (904) 366-1500
Facsimile: (904) 366-1501

Attorneys for Debtor Shelbran Investments, L.P. as Plan Proponent

# DISCLAIMER

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF PROVIDING ADEQUATE INFORMATION WITH RESPECT TO THE PLAN OF REORGANIZATION (THE "PLAN" OR "PLAN OF REORGANIZATION") OF **SHELBRAN INVESTMENTS, L.P.** (THE "DEBTOR") PROPOSED BY THE DEBTOR AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO EVALUATE THE TERMS OF THE PLAN. NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN, IF ANY.

ALL CREDITORS AND INTEREST HOLDERS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS AND SCHEDULES ANNEXED TO THE PLAN AND THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE UNITED STATES BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW. THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, SHELBRAN INVESTMENTS, L.P.

## DISCLOSURE STATEMENT

NOW COMES Shelbran Investments, L.P., as Debtor and Plan Proponent, pursuant to 11 U.S.C. § 1125 and Rule 3017 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and proposes the following Disclosure Statement in connection with its proposed Plan of Reorganization.

### I. INTRODUCTION

This Disclosure Statement is proposed by Debtor in connection with the filing of a Plan of Reorganization ("Plan"), a copy of which is attached as Exhibit A. The Plan provides for the reorganization of the Debtor and distributions to its creditors.

The purpose of this Disclosure Statement and accompanying Plan is to provide adequate information to enable creditors and any and all claimants of the Debtor to make an informed judgment with respect to voting to accept or reject the Plan. The Disclosure Statement and proposed Plan proposed herein should be read together. Creditors, partners and other parties in interest including equity holders may wish to consult with their own counsel or other advisors with respect to the contents of this instrument.

### II. CONDITIONS TO CONFIRMATION UNDER THE BANKRUPTCY CODE

In order to confirm the Plan, the Bankruptcy Code ("Code") requires that the Bankruptcy Court ("Court") make a series of determinations concerning the Plan, including that (i) the Plan has classified creditor, partner and shareholder interests in a permissible manner; (ii) the contents of the Plan comply with the technical requirements of Chapter 11 of the Code; (iii) the Debtor has proposed the Plan in good faith; and (iv) the plan proponents' disclosures concerning the Plan have been adequate, and have included information concerning all payments made or promised in connection with the Plan and the Chapter 11 proceeding.

The Code also requires that: (i) the Plan be accepted by the requisite vote of holders of claims and interests; (ii) the Plan be feasible; and (iii) the confirmation of the Plan be in the "best interests" of all creditors, partners and equity holders. To confirm the Plan, the Court must find that all three conditions are met. As a result, even if creditors, partners and equity holders of the Debtor accept the Plan by the requisite vote, the Court must make independent findings with respect to the Plan's feasibility, and whether it is in the "best interests" of the parties in interest. The classification, best interests, acceptance and feasibility conditions to confirmation are discussed below.

If the Plan is not accepted and confirmed, an alternate plan submitted by the Debtor or by another party in interest may be accepted by creditors, partners and equity holders and confirmed by the Court, or the Debtor may be liquidated pursuant to Chapter 7 of the Code with the net proceeds of such liquidation being distributed in the following order: case administration expenses incurred by the Debtor, priority creditors, unsecured creditors, and equity holders.

#### A. Classification of Claims and Interests

The Court requires that a plan of reorganization place each creditor's claim and each partner's or shareholder's interest in a class with other claims or interests which are "substantially similar." The dollar amount of a claim is not usually the basis upon which to distinguish it from other claims. However, an exception to the general rule is permitted in a case of a separate class of claims consisting of only unsecured claims, each of which is less than an amount that the Court approves as reasonable and necessary for administrative convenience.

**B. Best Interests of Unsecured Creditors and Interest Holders**

Notwithstanding creditor, partner and equity holder acceptance of the Plan, the Court must independently determine that the Plan is in the best interests of all classes of creditors and interest holders. "Best Interests" means that the Plan provides to each member of each impaired class of claims and interests a recovery which has a present value at least equal to the present value of the distribution which each such person would receive if the Debtor were liquidated under Chapter 7 of the Code. The Plan Proponent believes that the Plan is in the best interests of all creditors.

To calculate what the members of each impaired class of unsecured claims and interests would receive if the Debtor were liquidated, the Court must first determine the dollar amount that would be generated from the liquidation. After determining this amount, the Bankruptcy Court must subtract:

(i) the costs of liquidation (including trustee's fees, the fees of counsel and other professionals employed by the trustee and selling expenses);

(ii) unpaid expenses incurred by the Debtor during its reorganization proceeding (such as fees for attorneys, accountants and other professionals); and

(iii) claims arising by reason of the trustee's rejection of obligations incurred by the Debtor during reorganization. These costs and expenses, such other claims as might arise during liquidation, and secured claims which may attach to liquidation proceeds, are paid in full out of the liquidation proceeds before the balance is distributed to holders of unsecured claims. *See* Exhibit "B" Liquidation Analysis.

**C. Acceptance**

The Code requires as a condition to confirmation that each impaired class of claims or interests accept the Plan, with the exception described in Section D below. The Code defines acceptance of the plan of reorganization by a class of claims as acceptance by two-thirds (2/3) in dollar amount and majority in the number of claims of that class, but for that purpose counts only those claims who actually vote to accept or reject the Plan. Holders of claims or interests who fail to vote are not counted as either accepting or rejecting the Plan.

Classes of claims or interests that are not "impaired" under the Plan are deemed to have accepted the Plan. A class is "impaired" if the legal, equitable, and contractual rights attaching to the claims or interests of that class are modified, other than by curing defaults, by reinstating maturities or by payment in full in cash. The proposed Plan impairs certain creditor classes.

**D. Confirmation Without Acceptance by all Impaired Classes**

The Code contains provisions for confirmation of a plan even if the Plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted it. These "cram-down" provisions for confirmation of a plan despite the non-acceptance of one or more impaired classes of claims of interests are set forth in § 1129(b) of the Code.

If a class of secured claims rejects the Plan it may still be confirmed so long as the Plan meets one of several different tests including: (i) that the Plan provides that each holder included in the class retains its liens securing such claims, whether the property subject to such claims is retained by the Debtor or transferred to another entity, to the extent of the allowed amount of such claims, and each holder receives on account of its claim deferred cash payments totaling the

allowed amount of such claim, for value, as of the effective date of the Plan, of at least the value of such holder's interest in the Debtor's interest in such property; or (ii) that the Plan provides each holder included in the class with the realization of the indubitable value of the claim.

If an impaired class of unsecured claims rejects the Plan, it may still be confirmed so long as the Plan provides that: (i) each holder of a claim included in the rejecting class receives or retains on account of that claim property which has a value, as of the effective date of the Plan, equal to the allowed amount of such claim, or (ii) the holder of any claims or interest that is junior to the claim of such class will not receive or retain on account of such junior claim or interest any property at all.

If an impaired class of interests rejects the Plan, it may still be confirmed so long as the Plan provides that: (i) each holder of an interest of such Class receive or retain on account of such interest property of a value, as of the effective date of the Plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or (ii) the holder of any interest that is junior to the interest of such Class will not receive or retain any property under the Plan on account of such junior interest.

The Plan represents a legally binding arrangement and must be read in its entirety and in connection with this Disclosure Statement.

## III. HISTORICAL BACKGROUND

### A. Overview

Shelbran Investments, L.P. ("Shelbran") was formed as a California Limited Partnership on January 20, 2004 for the purpose of purchasing, developing, and selling commercial and residential properties for long-term capital gains. That is its current business. The ownership of Shelbran resides in The Shelbran Company, Inc. as its General Partner, and the Holgate Family Trust, as its sole Limited Partner. The Debtor's operations are located at 12781 South Highway 475, Ocala, Florida.

Between 2004 and the present, Shelbran Investments, L.P., has consummated the purchase, development, and/or sale of seventy-two (72) properties. These properties are located in San Jacinto, California; Ocala, Florida; Banning, California; Hemet, California; Perris, California; Oakley, California; Anza, California; Desert Hot Springs, California; Indio, California; Dayton, Nevada; Austin, Texas; Reno, Nevada; Nogales, Arizona; and Granite Bay, California.

Of these properties, on the Petition Date of December 21, 2010 the Debtor owned:

(1) 12871 South Highway 475, Ocala, Florida 34480, a 120 acre operational horse farm;

(2) 34.5 acres of vacant commercial-zoned land comprising six individual improved, fully graded parcels in San Jacinto, California;

(3) 38.83 acres of vacant commercial-zoned land in San Jacinto, California;

(4) a 62% ownership interest in 59.29 acres of vacant commercial-zoned land in San Jacinto, California;

(5) 53 acres of vacant land in San Jacinto, California;

(6) a home located at 1570 Shelbran Court, San Jacinto, California;

(7) a home located at 1590 Shelbran Court, San Jacinto, California;

5

(8) a vacant residential-zone parcel located at 1510 Shelbran Court, San Jacinto, California;

(9) a vacant residential-zone parcel located at 1530 Shelbran Court, San Jacinto, California;

(10) a rental residential property located at 2144 Villines Avenue, San Jacinto, California;

(11) a 50% ownership interest in 2.25 acres of vacant residential-zoned land located on Hazeldell Court, San Jacinto, California;

(12) 160 acres of vacant land located in Nogales, Arizona;

(13) 5 acres of vacant land (Vista Lago Parcel 2) in Hemet, California;

(14) 5.7 acres of vacant land (Vista Lago Parcel 5) in Hemet, California;

(15) 5.86 acres of vacant land (Vista Lago Parcel 6) in Hemet, California;

(16) 10.34 acres of vacant land (Vista Lago Parcel 7) in Hemet, California;

(17) 10.21 acres of vacant land (Vista Lago Parcel 8) in Hemet, California;

(18) 7.6 acres of vacant land (Vista Lago Parcel 9) in Hemet, California;

(19) 7.46 acres of vacant land (Vista Lago Parcel 10) in Hemet, California;

(20) 11.73 acres of vacant land (Vista Lago Parcel 11) in Hemet, California;

(21) 8.67 acres of vacant land (Vista Lago Parcel 12) in Hemet, California;

(22) 13.97 acres of land with a single-family residence (Vista Lago Parcel 13) in Hemet, California, also known as 40700 Gibbel Road, Hemet California;

(23) 1.67 acres of vacant land with a single-family residence (Vista Lago Parcel 14) in Hemet, California, also known as 40720 Gibbel Road, Hemet, California;

(24) a 20% ownership interest in 18 acres of vacant commercial-zoned land in San Jacinto, California;

(25) a 50% ownership interest in 20 acres of residential land in Anza, California; and

(26) a 18.25% ownership interest in 165 acres in Hemet, California.

As delineated in more detail with regard to each specific creditor class identified, the purchase of a number of these real estate properties were financed through Alarion Bank, Bank of America, Bank of Hemet, Encore Income Fund, Independence Bank, and Odell Income Fund.

The Debtor's properties have been managed, purchased, sold, developed, and maintained by Mr. Stephen R. Holgate, the Debtor's agent. Mr. Holgate handles day-to-day operational issues. Neither he nor the Debtor's General Partner, the Shelbran Company, Inc. receives regular compensation, salary, or benefits.

### B. Events Prior to the Filing of this Case

In 2010, due to the general downturn in the economy, particularly the related diminution in value of commercial real estate and decrease in the demand for property, the Debtor fell behind in its loan payments to Independence Bank with regard to a loan secured by three of its

properties located in San Jacinto, California, as described below. In 2010, the Debtor actively negotiated with Independence Bank regarding the loan issues, but such negotiations were unsuccessful. Independence Bank recorded a Notice of Default and Election to Sell Under Deed of Trust with regard to all three (3) properties on July 21, 2010 in the Official Records of Riverside County, California.

On November 17, 2010, Notices of Trustee's Sale were recorded in the Official Records of Riverside County, California for two (2) of the subject parcels. A related non-judicial foreclosure sale for both properties was set for December 8, 2010, and then subsequently rescheduled for December 22, 2010. On December 14, 2010, the Notice of Trustee's Sale for the third property was recorded in the Official Records of Riverside County, California, and was set for non-judicial foreclosure sale on January 7, 2011. The Debtor continued attempted negotiations throughout this time period. When negotiations continued to be unsuccessful, the Debtor was compelled to file this Chapter 11 case on December 21, 2010 (the "Petition Date").

On or about August 11, 2010, Riverside County (California) Transportation Commission (the "RCTC") had filed a lawsuit in the Superior Court for Riverside County, California, Case RIC10016058, against the Debtor, the Shelbran Company, Inc., and Stephen R. Holgate. In its complaint, the RCTC sought damages against each of the defendants based upon what RCTC alleges were improper actions they took in connection with the RCTC's purchase of 36.67 acres of vacant real property from the Debtor in October 2007 for $22,613,000.00. The subsequent filing of this case stayed the action against the Debtor and that stay remains in effect.

On or about November 2010, Stephen R. Holgate was indicted in the County of Riverside, California in the Superior Court of California, Case Numbers RIF10005893 RIF153642. The Debtor is not a defendant in these actions, nor in any criminal action. The charges against Mr. Holgate comprise thirty-one felonies and seventy-one misdemeanors, including the making of campaign contributions in a false name, the procurement and offer of a false and forged instrument related to campaign contributions. the giving or offering of a bribe to any member of any common council, board of supervisors, or board of trustees of any county, city and county, city, or public corporation, conducting of a monetary transaction with the specific intent to promote or facilitate the promotion, management, establishment or carrying on of any criminal activity, or knowing that the monetary instrument is derived directly or indirectly from criminal activity, perjury, and conspiracy. With regard to Mr. Holgate, these charges continue to be pending. Codefendants include James William Ayres, Nancy Jo Ayres, Byron Jerry Ellison, Sr., Jimmie Dale Stubblefield, Jr., John Richard Mansperger, Scott Douglas Shaull, Robert Edward Osborne, and James Walter Potts. To date Mr. Ayers has pled guilty to felony conspiracy, bribery and conflict of interest charges, and two (2) misdemeanor illegal contribution charges and one (1) money laundering charge. Ms. Ayers has pled guilty to a felony charge of falsifying a 2008 elected official's statement.

**IV. MAJOR EVENTS DURING THE DEBTOR'S CHAPTER 11 CASE**

On the Petition Date, December 21, 2010, the Debtor filed its Voluntary Petition, Chapter 11 Case Management Summary, and Statement of Corporate Ownership. The Clerk of the Bankruptcy Court established April 19, 2011 (the "Claims Bar Date") as the last date on which a non-governmental creditor or interest holder could file a proof of claim or a proof of interest.

On January 12, 2011, Bank of Hemet appeared in the case as a secured creditor through Howard S. Toland, Esq.

7

On January 12, 2011 Independence Bank appeared in the case as a secured creditor through Jason Burnett, Esq. of the firm GrayRobinson, P.A, and on February 7, 2011, through Thomas J. Polis, Esq. as additional counsel.

On January 15, 2011, and pursuant to an order granting the Debtor an extension of time to file its schedules, the Debtor filed its bankruptcy schedules and a statement of financial affairs. In the schedules, the Debtor listed debts of $21,179,509.00, the majority of which were secured in whole or in part by liens on the Debtor's assets.

On January 15, 2011, the Debtor also filed an *Application to Employ Robert D. Wilcox, as Attorney for the Debtor*. The Bankruptcy Court granted that application by order entered February 23, 2010.

On January 17, 2011, Alarion Bank as a secured creditor appeared in the case through Karen K. Specie, Esq.

On February 17, 2011, Independence Bank filed its *Motion for Relief from Stay Re: Real Property located in Riverside County, California.* This motion is currently set for Final Evidentiary Hearing on July 29, 2011.

On April 21, 2011, Riverside County Transportation Commission filed its *Amended Motion for Relief from Stay Re: Judgment in California State Court Action* through Charles M. Tatelbaum, Esq. The Debtor filed an *Objection to Amended Motion for Relief from Stay* on May 21, 2011. Riverside County Transportation Commission's *Amended Motion* was denied by the Court's entry of an Order on May 27, 2011.

On April 27, 2011, Bank of Hemet filed its *Motion for Relief from Stay Re: Real Property – 1510, 1530, 1570 & 1590 Shelbran Court*, which was granted by the Court's entry of an Order on May 26, 2011.

On May 21, 2011, the Debtor filed its *Motion to Obtain Credit.* It filed a related *Amended Motion to Obtain Credit*, was filed on June 27, 2011. Objection was made to this *Amended Motion* by the United States Trustee on June 30, 2011, and was joined by Independence Bank on July 1, 2011. The motion is set for Final Evidentiary Hearing on August 29, 2011.

On June 1, 2011, Ramona Business Park, LLC appeared as a secured lienholder through Zachary J. Bancroft, Esq., and filed its *Motion for Relief from Stay Re: Real Property located in Riverside California or Alternatively for Adequate Protection*. The Motion was granted by the Court's entry of an Order on June 27, 2011 granting stay relief, without the opposition of the Debtor. The Debtor believes that it has no other obligations to Ramona Business Park, LLC, as there was no debt between the parties.

On June 1, 2011, the Debtor filed its *Application to Employ Marshall McIntyre as Appraiser*. After a hearing on July 5, 2011, the Court approved the Application nunc pro tunc to May 1, 2011. The Bankruptcy Court granted that Application by order entered July 21, 2011

On June 9, 2011, the United States Trustee filed its *Motion to Dismiss Case or Convert Case to Chapter 7*. Independence Bank filed its *Joinder* on June 14, 2011. Riverside County Transportation Commission filed its *Joinder* on June 17, 2011. Both creditors Odell Income Fund, L.P. and Encore Income Fund, LLC, filed a on June 20, 2011. The Debtor filed its *Objection* on June 27, 2011. An initial hearing on the *Motion* and *Joinder Motions* was held on June 28, 2011. The matter is set for Final Evidentiary Hearing on August 23, 2011.

On June 12, 2011, Odell Income Fund, L.P., and Encore Income Fund, LLC, appeared in the case through Jason Burnett, Esq. of the firm GrayRobinson, P.A, and filed its *Motion for Relief from Stay*. The Motion was resolved consensually through the entry of an Order which describes the request for stay relief but requires the debtor to pay $4,166.66 per month to Odell Dream Fund, L.P. until confirmation.

On June 27, 2011, the Debtor filed its *Motion to Sell Property Free and Clear of Liens – 2007 Chevrolet Suburban*. This motion was heard on July 22, 2011, and the Court granted the Motion. The Debtor is preparing an appropriate order.

The Debtor is current in filing its Monthly Operating Reports. The report covering the period from June 1, 2011 to June 30, 2011 shows that as of June 30, 2011 the Debtor had cash on hand of $344,694.67. The majority of those funds came from the repayment of a secured note by Mr. Holgate's mother upon the sale of her home. The cash-on-hand amount will certainly be reduced by (a) administrative expenses in the case including post-petition obligations for taxes, insurance, and professional fees, (b) "adequate protection" payments made to secured creditors, and (c) marketing and other costs associated with the consummation of the Plan. A copy of the June 2011 Monthly Operating Report is attached as Exhibit "C." A copy of the Claims Register is attached as Exhibit "D."

## V. THE PLAN OF REORGANIZATION

### A. The Debtor as Plan Proponent

The Debtor is the plan proponent.

### B. Reorganization

If the Court enters an order confirming the Plan, the Plan will take effect on the "Effective Date," which is the date thirty (30) days following the date upon which the confirmation order becomes a final order, or such other earlier date on or after the confirmation hearing date as the Plan Proponent may elect. If such day is a weekend day and/or a legal holiday, the effective date shall be the next business day.

The basic terms of the Plan are (a) the Debtor shall transfer a portion of its properties to those creditors which are secured in full satisfaction of their respective debts; and (b) the Debtor shall market and sell a portion of its properties to pay a portion of the debts owed to its unsecured creditors. Based upon its review of the claims and the plan treatments provided under the Plan of Reorganization, the Debtor believes that it will pay its unsecured creditors in full. However, it cannot guarantee that result, as it is dependent upon the claims objection process and events in the case.

Management of the Reorganized Debtor will remain the same, with Stephen R. Holgate managing day-to-day operations. While the Debtor does not expect that the pending criminal charges against Mr. Holgate will effect the ability of him to manage the Debtor, if such impairment occurs, The Shelbran Company, as General Partner of the Reorganized Debtor, will appoint a new manager for day-to-day operations.

### C. Classes, Allocations and Disbursements

Distributions will be made to creditors from the transfer of properties owned by the Debtor at the Petition Date and proceeds from the sale of properties.

The Plan provides the express treatment per Class, in the following particulars:

Not all classes of claims and interests are impaired under the Plan by virtue of 11 U.S.C. §1124. The Pre-Petition Date rights of the Classes and the obligations of the Debtor are modified and replaced by the following:

5.01.   Class 1 Claims:

(1) Description of Debt.  Class 1 consists of the Independence Bank secured claim on three parcels of vacant commercial-zoned land located in San Jacinto California, San Jacinto Property Parcels 1, 2, and 3. On or about December 13, 2007, the Debtor executed a Promissory Note in the original principal amount of $5,400,000.00 (the "Note") to Independence Bank.  The Note was initially secured by one Deed of Trust, but following Change in Term Agreements was ultimately secured by three separate Deeds of Trust delineated below.

   a. Change in Term Agreements:  On December 20, 2008, the first Change in Terms Agreement extended the maturity date from December 20, 2008, to June 20, 2009. Additionally, the principal was decreased from $5,400,000.00 to $5,288,402.43, and Independence Bank was granted additional collateral in the form of a second Deed of Trust on Parcel 2, as described below.  This Change in Terms also required the assignment of one-hundred percent (100%) of the beneficial interests of the Debtor in the "B" shares of Encore Income Fund, LLC.  Subsequently, a Change in Terms Agreement dated June 25, 2009, extended the maturity date from June 20, 2009, to December 20, 2009.  An additional Change in Terms Agreement dated December 20, 2009, extended the maturity date from December 20, 2009, to December 20, 2010, decreased the principal amount from $5,288,402.43 to $5,063,402.43.  Additionally, Independence Bank was granted additional collateral in a third Deed of Trust on Parcel 3, as described below.

   b. Deeds of Trust: The first Deed of Trust is dated December 13, 2007, and recorded on December 19, 2007, in the Official Records of Riverside County, California, Instrument No. 2007-0755051, granting Independence Bank a security interest in six parcels of vacant real property totaling approximately 34.5 acres ("San Jacinto Property Parcel 1") located in San Jacinto, Riverside County, California and more particularly described as:

> PACELS 2,3,4,5,6 AND 7 OF PARCEL MAP NO. 31281 ON FILE IN BOOK 209 PAGES 3 THROUGH 7 INCLUSIVE OF PARCEL MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.
>
> APN: 430-130-057-7 and 430-130-058-8 and 430-130-059-9 and 430-130-060-9 and 430-130-061-0 and 430-130-062-1.

The second Deed of Trust is dated December 20, 2008, and was recorded on January 26, 2009 in the Official Records of Riverside County, California, Instrument No. 2009- 0035233, granting Independence Bank a security interest in 38.83 acres ("San Jacinto Property Parcel 2") of vacant real property located in San Jacinto, Riverside County, Florida, and more particularly described as:

> PARCEL 2 OF PARCEL MAP 31522, IN THE CITY OF SAN JACINTO, AS PER MAP RECORDED IN BOOK 209, PAGE(S) 16 THROUGH 19, INCLUSIVE OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY, CALIFORNIA.
>
> APN: 430-100-017-8

It is of particular note that this second Deed of Trust is subordinate to a Deed of Trust securing a Promissory note in the amount of $3,000,000.00, which is owned equally by Encore Income Fund, LLC and Independence Bank.

The third Deed of Trust is dated December 20, 2009, and was recorded on July 16, 2010, in the Official Records of Riverside County, California, Instrument No. 2010-0335036, granting Independence Bank a second priority security interest in 59.29 acres ("San Jacinto Property Parcel 3") of vacant real property located in San Jacinto, Riverside County, California, and more particularly described as:

> PARCEL 1 OF PACEL MAP 31522, IN THE CITY OF SAN JACINTO, AS PER MAP RECORDED IN BOOK 209, PAGE(S) 16 THROUGH 19, INCLUSIVE OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY, CALIFORNIA.
>
> APN: 430-100-002 AND 013

It is of note that Independence Bank's third Deed of Trust is subordinate to the first priority lien of Ramona Business Park, LLC.

(2) <u>Impairment.</u>   This class is not impaired.

(3) <u>Treatment.</u>   The Debtor shall cause or permit the transfer San Jacinto Property Parcel 1, a portion of the Property securing to the claim of Independence Bank, to Independence Bank in full satisfaction of Independence Bank's claim and all debts owed to it by the Debtor. More specifically, upon transfer, Independence Bank shall mark the Note paid in full and shall cause its Deeds of Trust and all related security agreements to

be cancelled. Further, Independence Bank shall dismiss with prejudice all litigation pending against the Debtor and any codebtors or guarantors.

5.02. Class 2 Claims:

(1) Description of Debt. Class 2 consists of the secured claim of Odell Income Fund, L.P. on 53 acres of vacant commercial-zoned land in San Jacinto, California, San Jacinto Property 53 Acres. On or about May 15, 2007, the Debtor executed a Promissory Note in the original amount of $4,500,000.00 (the "Note") to Odell Income Fund, L.P. This Note was amended by a First Amendment to the Promissory Note on or about November 1, 2008, and then a Second Amendment to Promissory Note on or about January 1, 2009. The Note is secured by a Deed of Trust with Assignment of Rents which is dated May 15, 2007, and was recorded on June 4, 2007, Instrument No. 2007-0365434, in the Public Records for Riverside County, California. The Deed of Trust encumbers the property more particularly described as:

> PARCEL 4, AS SHOWN BY PARCEL MAP 31522, ON FILE IN BOOK 209 PAGES 16 THRU 19, OF PARCEL MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

(2) Impairment. This class is impaired.

(3) Treatment. The Debtor shall transfer a fifty percent (50%) interest in approximately 38.83 acres of real property in San Jacinto, Riverside County, California, described above as San Jacinto Property Parcel 2 owned by the Debtor to Odell Income Fund, L.P., in full satisfaction of Odell Income Fund, L.P.'s claim. Upon transfer, Odell Income Fund, L.P., shall mark the Note paid in full and shall cause its Deeds of Trust and all related security agreements to be cancelled. Further, Odell Income Fund, L.P., shall dismiss with prejudice all litigation pending against the Debtor and any codebtors or guarantors.

5.03 Class 3 Claims:

(1) Description of Debt. Class 3 consists of the secured debt of Encore Income Fund, L.P. on 38.83 acres of vacant land, San Jacinto Property Parcel 2. On or about March 28, 2006, the Debtor sold the San Jacinto Parcel 2, as described above, to H.D.I., Inc., and Wayne & Francis Lee, LLC. On or about March 28, 2006, H.D.I., Inc. and Wayne & Francis Lee, LLC executed a Promissory Note in the original principal amount of $3,000,000.00 (the "Note"). On or in about July 2006, the Debtor sold to Encore Income Fund, LLC, fifty percent (50%) interest in the Note. San Jacinto Parcel 2 was then repurchased by the Debtor on in or in about December 2007. And, on December 20, 2008, the Debtor assigned one-hundred percent (100%) of the beneficial interests of the Debtor in the "B" shares of Encore Income Fund, LLC, to Independence Bank.

(2) Impairment. This class is impaired.

(3) <u>Treatment.</u> The Debtor will transfer a fifty percent (50%) interest in approximately 38.83 acres of real property in San Jacinto, Riverside County, California, described above as San Jacinto Property Parcel 2 in full satisfaction of Encore Income Fund, LLC's claim.  Upon transfer, Encore Income Fund, shall mark the Note paid in full and shall cause its Deeds of Trust and all related security agreements to be cancelled.  Further, Encore Income Fund shall dismiss with prejudice all litigation pending against the Debtor and any codebtors or guarantors.

5.04. <u>Class 4 Claims:</u>

(1) <u>Description of Debt.</u>  Class 4 consists of the pre-petition tax claims of Don Kent, the Riverside County, California, Treasurer-Tax Collector on Debtor's property. No proof of claim for this class has been filed.

(2) <u>Impairment.</u> This class is not impaired.

(3) Treatment.  The Riverside County, California, Tax Collector, shall be paid in full with statutory interest, on or before December 20, 2015 or on the date of the sale or transfer of the property on which on which the Tax Collector has a lien.

5.05. <u>Class 5 Claims:</u>

(1) <u>Description of Debt.</u>   Class 5 consists of the secured debt owed to Bank of Hemet by the Debtor on real property commonly known as 1510, 1530, 1570, and 1590 Shelbran Court, San Jacinto, CA 92582.

   a. <u>April 1, 2010 Loan:</u> On or about April 1, 2010, the Debtor executed and delivered to the Bank of Hemet, a Business Loan Agreement, showing a loan in the principal amount of $320,000.00, with a maturity date of April 1, 2015.

   On or about April 1, 2010, the Debtor also executed and delivered to the Bank of Hemet a Deed of Trust, in which Debtor granted a mortgage lien on real property commonly known as 1510, 1530, 1570, and 1590 Shelbran Court, San Jacinto, CA 92582, bearing respectively, Riverside County Tax Assessor's Parcel Numbers 436-531-001-7, 436-531-002-8, 436-531-004-0 and 436-531-005-1, which is more particularly described as:

   > LOTS 1, 2, 4, AND 5 OF TRACT NO. 33546, AS SHOWN BY MAP ON FILE IN BOOK 412 PAGES 72 AND 74 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

   The Deed of Trust was recorded on or about April 28, 2010, in the Public Records of Riverside County, California, in the Official Records Book as Document Number 2010-0194577.

(2) <u>Impairment.</u> This class is impaired.

(3) <u>Treatment.</u>  The Debtor will abandon any property securing any debt to Bank of Hemet.  On or about April 27, 2011, Bank of Hemet filed a Motion for Relief from Stay to pursue its in rem state remedies with regard property commonly known as 1510, 1530, 1570, and 1590 Shelbran Court, San Jacinto, CA 92582.  The Court entered an Order granting this Motion, on or about May 26, 2011. Bank of Hemet has agreed to limit its unsecured claim in this case to $5,000.00.

5.06.   <u>Class 6 Claims</u>:

(1) <u>Description of Debt.</u> Class 6 consists of the secured claims of Bank of America, N.A.  related to the Debtor's ownership of the real property located at 2144 Villines Avenue, San Jacinto, California.

(2) <u>Impairment.</u> This class is not impaired.

(3) <u>Treatment.</u>  The Debtor will transfer real property located at 2144 Villines Avenue, San Jacinto, California in full satisfaction of Bank of America, N.A.'s claim. Upon transfer, Bank of America, N.A., shall mark the Note paid in full and shall cause its Deeds of Trust and all related security agreements to be cancelled.  Further, Bank of America, N.A. shall dismiss with prejudice all litigation pending against the Debtor and any codebtors or guarantors.

5.07.   <u>Class 7 Claims</u>:

(1) <u>Description of Debt.</u>  Class 7 consists of the secured claims of Alarion Bank related to the Shelbran Farm Property, described more particularly as:

SEC 04 TWP 17 RGE 22
COM AT THE SE COR OF SEC 5 & THE SW COR OF SEC 4 TH S 89-41-09 W 1015.17 FT TH N 20-44-28 W 1870.02 FT TH N 69-15-35 E 671.38 FT TH N 89-10-14 E 1051.08 FT TH S 00-02-28 W 34.07 FT TH N 89-10-14 E 621.70 FT TH S 12-46-42 W 146.21 FT TO THE POC OF A CURVE TH SELY 63.29 FT ALONG ARC OF CURVE CONCAVE NELY HAVING A RADIUS OF 35 FT THRU A CENTRAL ANGLE OF 103-36-28 A CHORD BEARING & DISTANCE OF S 39-01-32 E 55.01 FT TH S 89-10-14 E 100.26 FT TH S 57-55-38 E 351.20 FT TH N 59-40-08 E 350.55 FT TH S 00-04-42 W 1774.04 FT TH S 89-50-10 W 1323.35 FT TO THE POB & COM AT THE SE COROF SEC 5 AND THE SW COR OF SEC 4 TH S 89-41-09 W 1015.17 FT TH N 20-44-28 W 1870.02 FT TH N 69-15-35 E 671.38 FT TH N 89-10-14 E 480.82 FT TO THE POB TH 65.02 FT ALONG A NON-TANGENT CURVE CONCAVE TO THE EAST HAVING A RADIUS OF 690 FT A CHORD BEARING & DISTANCE OF N 00-53-31 W 65 FT TH N 89-10-14 E 1215.50 FT TH S 12-46-42 W 101.93 FT TH S 89-10-14 W 621.70 FT TH

(2) <u>Impairment.</u> This class is impaired.

(3) <u>Treatment.</u>   Class 7 will receive payment in be paid in full plus interest at the contractual rate upon the sale of the Shelbran Farm Property, which the Reorganized

Debtor will cause to occur on or before June 30, 2012. If the sale of the Shelbran Farm Property does not occur by that date, the Reorganized Debtor will make monthly payments to the claim holder that will pay the creditor in full with interest based upon a twenty-year amortization of the debt.

5.08. <u>Class 8 Claims</u>:

(1) <u>Description of Debt.</u>  Class 8 consists of the secured claims of the Marion County Tax Collector for $9,107.07 in past dues taxes on the Shelbran Farm Property, described more particularly as:

SEC 04 TWP 17 RGE 22
COM AT THE SE COR OF SEC 5 & THE SW COR OF SEC 4 TH S 89-41-09 W 1015.17 FT TH N 20-44-28 W 1870.02 FT TH N 69-15-35 E 671.38 FT TH N 89-10-14 E 1051.08 FT TH S 00-02-28 W 34.07 FT TH N 89-10-14 E 621.70 FT TH S 12-46-42 W 146.21 FT TO THE POC OF A CURVE TH SELY 63.29 FT ALONG ARC OF CURVE CONCAVE NELY HAVING A RADIUS OF 35 FT THRU A CENTRAL ANGLE OF 103-36-28 A CHORD BEARING & DISTANCE OF S 39-01-32 E 55.01 FT TH S 89-10-14 E 100.26 FT TH S 57-55-38 E 351.20 FT TH N 59-40-08 E 350.55 FT TH S 00-04-42 W 1774.04 FT TH S 89-50-10 W 1323.35 FT TO THE POB & COM AT THE SE COROF SEC 5 AND THE SW COR OF SEC 4 TH S 89-41-09 W 1015.17 FT TH N 20-44-28 W 1870.02 FT TH N 69-15-35 E 671.38 FT TH N 89-10-14 E 480.82 FT TO THE POB TH 65.02 FT ALONG A NON-TANGENT CURVE CONCAVE TO THE EAST HAVING A RADIUS OF 690 FT A CHORD BEARING & DISTANCE OF N 00-53-31 W 65 FT TH N 89-10-14 E 1215.50 FT TH S 12-46-42 W 101.93 FT TH S 89-10-14 W 621.70 FT TH

(2) Impairment. This class is impaired.

(3) Treatment.  Class 7 will be paid in full with statutory interest upon the sale of the Shelbran Farm Property, which will occur on or before June 30, 2012.

5.06   <u>Class 9 Claims</u>:  Class 9 consists of all claims entitled to priority under section 507(a)(8) of the Bankruptcy Code, and is impaired. Class 9 Claimants will receive payment in full from Shelbran Investments, L.P., on June 30, 2012, or earlier if the Reorganized Debtor so elects.

5.07   <u>Class 10 Claims</u>: Class 10 consists of all general unsecured claims not entitled to priority under Section 507 of the Bankruptcy Code and for which the Allowed Claim amount exceeds $300.00.  Class 10 is impaired. Class 10 claimants will receive pro rata shares of the following payments from the Reorganized Debtor: $100,000.00, on the Effective Date; $100,000.00 on the six month anniversary of the Effective Date: $100,000.00 on the two-year anniversary of the Effective Date;

5.08   <u>Class 11 Claims</u>: Class 11 consists of all general unsecured claims not entitled to priority under Section 507 of the Bankruptcy Code and for which the Allowed Claim amount does not exceed $300.00. Class 11 is not impaired, as it is a convenience class and each holder of a Class 11 Allowed Claim will receive payment on the Effective Date.

### D. Distributions and Impairment

Distributions will be made to creditors as funds are available with payments made pursuant to specific agreements between the respective Reorganized Debtor and recipients after the Debtor or Reorganized Debtor and the Claimant agree upon the amount of the Claim or the Claim is allowed by the Court.

### E. General and Miscellaneous Plan Provisions

The Reorganized Debtor will, from and after confirmation of the Plan, be indebted for and obligated to pay those obligations and liabilities as set forth herein. The Bankruptcy Court shall retain jurisdiction post-confirmation.

### F. The Claims Bar Date

ANY CLAIMANT WHO FAILED TO FILE A TIMELY PROOF OF CLAIM WILL BE FOREVER BARRED FROM ASSERTING THEIR CLAIM AGAINST THE DEBTOR. THE DEADLINE TO FILE PROOFS OF CLAIM OR INTERESTS, OTHER THAN BY GOVERNMENTAL UNITS WAS APRIL 19, 2011.

### G. Feasibility of the Plan and Status of Debtor after confirmation

The Plan is feasible because the transfer of a portion of the real property presently owned by Shelbran Investments and the sale of a portion of the real property owned by Shelbran Investments will support the Reorganized Debtor's obligations under the Plan.

### H. Executory Contracts and Unexpired Leases

To the extent not already assumed or rejected pursuant to order of the Bankruptcy Court, the Reorganized Debtor will reject all executory contracts and unexpired leases of the Debtor.

### I. Discharge of the Debtor

The entry of an Final Order Confirming Plan acts as a discharge of any and all liabilities of the Debtor that are dischargeable under § 1141 of the Bankruptcy Code.

### J. Post-Confirmation Acts

The Reorganized Debtor shall have the ability to (a) pursue collection and avoidance actions, and to assert generally the Debtor's pre-confirmation rights, and (b) object to and negotiate claims. In addition the Debtor shall have the authority to take all actions reasonably necessary to effectuate the Plan, and to employ such professionals as reasonably necessary to do so, and to waive any conflict of interest based upon any professionals representation of the Debtor, and creditor, or based upon such professional's status as a creditor of the Debtor and/or a Reorganized Debtor.

### K. Conclusion

The Plan Proponent is of the opinion that the provisions of the Plan will satisfy the claims against the Debtor in a manner providing each the maximum value to fairly and equitably satisfy these claims. The Plan Proponent believes that the Plan proposed by the Plan Proponent represents the highest possible recovery for the estate and its creditors, and is in the best interests of the estate and its creditors.

The Plan Proponent asks the every creditor vote to accept the Plan of Reorganization.

Shelbran Investments, L.P.

_____
Stephen R. Holgate,
on behalf of Shelbran Investments, L.P.


                                                BRENNAN, MANNA & DIAMOND, P.L.

                                                /s/ ***Robert Wilcox***
                                                Robert D. Wilcox
                                                Florida Bar No. 755168
                                                Emily M. Friend
                                                Florida Bar No. 0073042
                                                800 West Monroe St.
                                                Jacksonville, Florida  32202
                                                Telephone:  904-366-1500
                                                Facsimile:   904-366-1501

                                                COUNSEL FOR THE DEBTOR